UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 07-351 |
| GREGORY WILFRED, JR. | SECTION I |

### ORDER & REASONS

Before the Court is defendant Gregory Wilfred, Jr.'s ("Wilfred") motion[1] for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). The government opposes the motion.[2] For the following reasons, the motion is denied.

### I.

On January 23, 2008, Wilfred pled guilty to three counts of an indictment,[3] which charged him with possession with the intent to distribute one hundred grams or more of a substance containing a detectable amount of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).[4] This Court sentenced Wilfred to a term of imprisonment of seventy-one months as to counts 1 and 2, to be served concurrently, and a term of sixty months as to count 3, to be served

---

[1] R. Doc. No. 69.
[2] R. Doc. No. 71.
[3] R. Doc. No. 5.
[4] R. Doc. No. 20, at 1.

1

consecutively to the sentences in counts 1 and 2.[5]  The Court also sentenced Wilfred to a term of supervised release of five years as to each count, to run concurrently.[6]

Wilfred began his period of supervised release on August 5, 2016;[7] just over six months later, on February 25, 2017, the Louisiana State Police arrested Wilfred for what he admitted was a violation of a mandatory condition of his supervision term—possession with intent to distribute and distribution of narcotics, specifically heroin and cocaine.[8]  Consequently, as a result of the violation of the supervised release, he was sentenced to a term of imprisonment of thirty-six months as to count 1, twenty-four months as to count 2, and sixty months as to count 3, all to run concurrently.[9]  Wilfred's projected release date is March 12, 2023.[10]

Wilfred filed a motion to reduce his term of supervised release under the First Step Act of 2018 on May 23, 2019,[11] which the Court denied because the offense, which involved not only crack cocaine but also heroin, was not a "covered offense" under § 404(a).[12]

Wilfred now requests compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A).[13]  Wilfred argues, pro se, that his medical conditions constitute

---

[5] *Id.* at 2.
[6] *Id.* at 3.
[7] R. Doc. No. 47, at 1.
[8] R. Doc. No. 56, at 1.
[9] *Id.*, at 1–2 (specifying that "[t]his sentence shall run consecutive to" a conviction in Orleans Parish Criminal District Court).
[10] R. Doc. No. 71, at 2.
[11] R. Doc. No. 58.
[12] R. Doc. No. 59 (reasoning that the statutory penalty for Wilfred's violation was not modified by section 2 or 3 of the Fair Sentencing Act of 2010).
[13] R. Doc. No. 69.

2

extraordinary and compelling reasons warranting a sentence reduction.[14] Specifically, Wilfred alleges that he suffers from "(1) hypertension/high blood pressure; and (2) severe obesity (i.e. movant is 5 feet and 9 inches in height weighing 260 lbs . . .)" and consequently falls within a group recognized as "high-risk" of severe illness by the Centers for Disease Control and Prevention (CDC) if he contracts COVID-19.[15] In support of his request, Wilfred includes a copy of his Bureau of Prisons (BOP) vital health records and a summary of his medication history, which state that he has active prescriptions for certain drugs, "to control blood pressure."[16]

Wilfred further claims that he is at greater risk of COVID-19 infection and death because FCI Yazoo City Low, where he is incarcerated, is "a hot bed for COVID-19."[17] Wilfred contends that the rate of COVID-19 spread at the facility was so high as to be newsworthy.[18] Wilfred claims that while incarcerated, following CDC recommendations to prevent exposure to COVID-19 "is impossible."[19] According to Wilfred, six inmates in his housing unit had tested positive for the virus as of the date he filed the instant motion.[20]

---

[14] *Id.* at 2.
[15] R. Doc. No. 69, at 2. The height and weight that Wilfred reports are substantially similar to his BOP medical records. *See* R. Doc. No. 69-1, at 10 (reporting Wilfred's height to be 69 inches and weight on February 19, 2020 to be 269 pounds).
[16] R. Doc. No. 69-1, at 5. The
[17] R. Doc. No. 69, at 5. As of July 30, 2020, at FCI Yazoo City Low, no inmates and two staff members are positive for COVID-19, and ninety-six inmates and nine staff members have recovered from COVID-19. Two inmates have died from it. *See COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited July 30, 2020).
[18] R. Doc. No. 69, at 2 (stating that FCI Yazoo City was mentioned on CNN in the context of COVID-19 spread).
[19] R. Doc. No. 69, at 5–10.
[20] R. Doc. No. 69, at 5.

Wilfred also includes certificates of successful completion of a parenting class,[21] the Release Preparation Course Work for Financial Planning 2,[22] and "Business Ettiquette,"[23] as well as a letter, dated January 17, 2020, on BOP letterhead and signed by a Drug Treatment Specialist, attesting to his successful completion of the Residential Drug Abuse Program.[24]

Wilfred states that on April 7, 2020 he sent an "electronic request" for early release to the warden of the facility at which he is being held because of his "concerns and conditions" related to COVID-19.[25] In light of these alleged circumstances, Wilfred asks that the Court reduce his sentence.[26]

The government opposes Wilfred's motion and argues that it should be denied. Despite acknowledging Wilfred's obesity to be a medical condition that may be "extraordinary and compelling," the government maintains that "the § 3553(a) factors weigh heavily against" his release.[27] The government describes BOP's general response to COVID-19 and outlines the various precautions being taken to safeguard

---

[21] R. Doc. No. 69-1, at 1.
[22] *Id.* at 2.
[23] *Id.* at 3.
[24] *Id.* at 4. That letter notes that "[b]ecause of Wilfred's dedication to the program and his willingness to invest in others," Wilfred was "selected by the treatment staff" to mentor others in the program's therapeutic community. *Id.*
[25] R. Doc. No. 69, at 3. In the April 7, 2020 electronic home request, which is quoted by Wilfred in his motion and a copy of which was supplied to the Court by the government, *see* R. Doc. No. 71-2, Wilfred requests "home confinement," rather than compassionate release. R. Doc. No. 69, at 3. On May 21, 2020, Wilfred sent a second electronic request to the warden, which was provided to the Court by the government, *see* R. Doc. No. 71-2, in which he requested compassionate release. Wilfred requests only compassionate release from the Court. *See* R. Doc. No. 69.
[26] R. Doc. No. 69.
[27] R. Doc. No. 71, at 1.

4

inmates nationwide.[28] The government confirms that Wilfred sought compassionate release through BOP administrative processes.[29]

## II.

In relevant part, 18 U.S.C. § 3582(c)(1)(A)(i) provides that a court may not modify a term of imprisonment unless a motion is made after the prisoner has exhausted his administrative remedies and the court, after considering the factors set forth in 18 U.S.C. § 3553(a), finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*.

The Sentencing Commission's relevant policy statement provides that extraordinary circumstances exist when the defendant suffers from a terminal illness or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13.

Although, historically, sentence reductions could be ordered only upon a motion by the Director of the BOP, the First Step Act of 2018 amended the statute to additionally allow prisoners to petition the Court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of

---

[28] *Id*. at 2–7.
[29] R. Doc. No. 71, at 2.

5

such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).  However, the Sentencing Commission's policy statements have not been amended since the enactment of the First Step Act and, consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as amended.  The relevant policy statement continues to plainly provide that a term of imprisonment may be reduced only upon a motion by the Director of the BOP upon a finding of extraordinary circumstances warranting a sentence reduction and a determination that the defendant is not a danger to the safety of any person or the community at large.  U.S.S.G. § 1B1.13 cmt. n.4.  This discrepancy has been recognized by numerous courts.  *See United States v. Perdigao,* 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (collecting cases).

Many courts have concluded that this discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act.  *See, e.g., United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019).  These district courts have found that they have discretion to determine what constitutes "extraordinary and compelling reasons" on a case by case basis, and reliance on the policy statement may be helpful, but not dispositive.  *See id.* ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("[W]hen a defendant brings a motion for a sentence reduction under the

amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief.").

Accordingly, the Court will consider whether Wilfred has presented the Court with evidence that "extraordinary and compelling reasons" warrant compassionate release and that he does not pose a danger to the safety of any other person or the community, all in light of the § 3553(a) factors.

### A. Exhaustion of Administrative Remedies

Section 3582 allows a court to consider a defendant's motion for modification of a term of imprisonment only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). As the government concedes, this requirement is satisfied.[30]

Wilfred requested compassionate release from the FCI Yazoo warden on May 21, 2020, and the warden did not respond to his request within 30 days.[31] Accordingly, the Court has jurisdiction to consider Wilfred's motion. *See id.*

### B. Extraordinary and Compelling Reasons

Although the policy statements of the Sentencing Commission have not been amended to reflect the statutory changes brought about by the First Step Act, the

---

[30] R. Doc. Nos. 71, at 2 & 71-2, at 1.
[31] R. Doc. No. 71-2, at 1.

7

policy statements are nevertheless instructive to the Court's determination of whether there are "extraordinary and compelling reasons" that warrant a reduction of Wilfred's sentence. *See United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). The Sentencing Commission's relevant policy statement provides, in pertinent part, that extraordinary circumstances exist when the defendant suffers from "a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A).

Wilfred claims, and his BOP medical records support, that he suffers from hypertension and obesity.[32] Those medical conditions do not rise to the level of terminal illness or substantially diminish Wilfred's ability to provide self-care from within FCI Yazoo City Low. In fact, Wilfred's medical records reflect that he is receiving treatment for hypertension from BOP and has been prescribed drugs to treat this condition.[33] Wilfred's ongoing receipt of medical attention for his hypertension evidences that he is able to care for his high blood pressure within prison. *See United States v. Mazur*, No. CR 18-68, 2020 WL 2113613, at *3 (E.D. La. May 4, 2020) (Africk, J.) ("Courts have also taken into account the quality of

---

[32] R. Doc. Nos. 69, at 2-5, & 71-2, at 19.
[33] R. Doc. No. 71-2, at 5.

8

healthcare provided to the defendant while incarcerated and whether granting the defendant compassionate release would have far-reaching implications, i.e. whether a large number of incarcerated defendants could be granted early release on the same grounds. . . . Notably absent from Mazur's motion is any assertion that the BOP is not providing him with adequate care.").

Moreover, courts have found that hypertension does not amount to an extraordinary or compelling reason for release. *See United States v. Guyton*, No. 11-271, 2020 WL 2128579, at *3 (E.D. La. May 5, 2020) (Milazzo, J.) (denying compassionate release for a 45-year-old with mild hypertension); *United States v. Alexander*, No. 14-126, 2020 WL 2468773, at *5 (M.D. La. May 13, 2020) (denying compassionate release because, among other reasons, high blood pressure was not by itself sufficiently extraordinary); *United States v. Adams*, No. 16-86, 2020 WL 3026458, at *1 (D. Conn. June 4, 2020) (denying compassionate release for a 59-year-old with high blood pressure); *United States v. Roberts*, No. 15-00135, 2020 WL 2130999, at *3 (W.D. La. May 5, 2020) (stating that the defendant's "proffered reason of hypertension fails to meet the standard for compassionate release"). Wilfred's hypertension does not provide an extraordinary or compelling reason.

Similarly, though obesity is an "underlying medical condition" that poses "increased risk for severe illness from COVID-19,"[34] and the government states that

---

[34] *People with Certain Medical Conditions*, Coronavirus Disease 2019 (COVID-19), CDC (July 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity.

9

Wilfred's obesity may be "an extraordinary and compelling reason,"[35] courts have found that obesity—alone or paired with hypertension—does not provide adequate grounds for compassionate release.  *See United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release of an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted"); *United States v. Whiteman,* No. 15-00298, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (denying compassionate release of a defendant whose "only active health problems are obesity and high blood pressure"); *United States v. Takewell*, No. 14-00036, 2020 WL 4043060, at *3 (W.D. La. July 17, 2020) (denying compassionate release upon finding that the defendant's "general complaint[s] [of] obesity and hypertension are not consistent with extraordinary or compelling circumstances as provided by the policy statement and its commentary"); *United States v. Wax*, No. 14-251, 2020 WL 3468219, at *2–3 (D.N.J. June 25, 2020) (same).  Wilfred's medical conditions are neither extraordinary nor compelling.

Wilfred's concerns regarding COVID-19 also do not warrant a reduction of his sentence.  BOP is undertaking measures to curb the spread of COVID-19 and to limit the risk of inmates contracting it.[36]  Wilfred has alleged only general concerns that the fact of being in a carceral setting raises the risk of COVID-19 infection.[37]

---

[35] R. Doc. No. 71, at 1, 10–11.
[36] *See* R. Doc. No. 71, at 2–7.
[37] *See* R. Doc. No. 69.

10

Numerous courts have concluded that such broad allegations do not warrant a sentence reduction under § 3582. *See United States v. Clark*, No. 17-85, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) ("Defendant cites no authority for the proposition that the *fear* of contracting a communicable disease warrants a sentence modification."); *United States v. Zywotko*, No. 19-113, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.") (quoting *United States v. Eberhart*, No. 13-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)); *United States v. Gileno*, No. 19-161, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno."); *United States v. Emmons*, No. 16-98, 2020 WL 3086606, at *2 (S.D. Miss. June 10, 2020) ("Were such [general] concerns sufficient, every federal prisoner would be entitled to a sentence reduction under § 3582(c)(1)(A).").

While the Court is alert to the risks of COVID-19 infection in correctional facilities, Wilfred has not demonstrated that BOP's response to the COVID-19 pandemic and the protocols it has implemented to curtail the spread of the virus are

inadequate.[38]  The existence of COVID-19 at FCI Yazoo City Low alone cannot independently justify compassionate release.  *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

### C. Safety to Others and the Community

Even if the Court were to find that Wilfred's circumstances presented extraordinary and compelling reasons to grant compassionate release, he still has not demonstrated that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).  Section 3142(g) requires the Court to consider factors such as the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community at large that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

Wilfred's criminal history includes three drug-related Louisiana state felony convictions for possession of crack cocaine, possession with intent to distribute marijuana, and possession with intent to distribute cocaine as well as two misdemeanor convictions for possession of marijuana.[39]  In the instant offense, while

---

[38] As the government advised, BOP has implemented revised preventative measures for all institutions, including quarantine and isolation procedures, to require that all newly-admitted inmates be assessed using a screening tool and temperature check. R. Doc. No. 71, at 2–7; *see BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 22, 2020).  Asymptomatic inmates are placed in quarantine for a minimum of 14 days or until cleared by medical staff, and symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation.  *Id.*

[39] R. Doc. No. 30, at 18–19 ¶¶ 32, 35, 37, 39, 42; *see also* R. Doc. No. 71, at 16.

12

on supervised release, Wilfred was arrested for two counts of distribution of cocaine, two counts of distribution of heroin, possession with the intent to distribute 1.5 grams of heroin, and possession with the intent to distribute 179.2 grams of crack cocaine.[40] When apprehended by Louisiana State Police, Wilfred sought to evade arrest by running into a building, up to the second floor, and jumping out a second-story window onto an awning in an attempt to escape the officer who had followed him inside.[41] Two firearms were retrieved from the car he had been driving.[42] The nature and circumstances of this offense combined with Wilfred's criminal history demonstrate that he would be a danger to the community if released.[43] *Cf. Perdigao*, 2020 WL 1672322, at *4 (finding that the defendant was not a danger to the community, because although he pled guilty to a number of serious crimes, none were crimes of violence or offenses involving controlled substances).

### III.

After reviewing the § 3553(a) factors[44] and considering the applicable policy statement by the Sentencing Commission, the Court does not find that there are compelling or extraordinary reasons warranting a reduction of Wilfred's sentence.

Accordingly,

**IT IS ORDERED** that Wilfred's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

---

[40] R. Doc. No. 56, at 1.
[41] R. Doc. Nos. 17, at 2–4 & 18, at 2–3.
[42] R. Doc. Nos. 17, at 2–4 & 18, at 2–3.
[43] *See* R. Doc. No. 71, at 16.
[44] The Court has specifically considered 18 U.S.C. § 3553(a)(1), (2)(A)–(C), (5).

New Orleans, Louisiana, July 30, 2020.

                                              **LANCE M. AFRICK**
                                    **UNITED STATES DISTRICT JUDGE**